## C. L. DULANEY ET AL *v.* JONES & ROGERS.

[57 South. 225.]

1. SALES. *Implied warranty of soundness. Suit for purchase price.*

There is an implied warranty of soundness in the case of the sale of provisions intended for human food, but with food for other purposes there is no implied warranty of soundness.

2. SALES. *Action for price. Pleading.*

Where the seller sues for the purchase price of feed for animals, and the purchaser pleads that it was sold for that purpose and that it was so decayed as to be unfit to feed animals and was worthless, such a plea is equivalent to a plea of total failure of consideration, and states a good defense as against a demurrer.

3. SAME.

The law does not imply a promise to pay for goods that are worthless and of no value. In such case there is a total failure of consideration.

4. SAME.

> If the articles purchased are worthless and of no value at all, the purchaser is not required even to return or to offer to return them. This principle, however, does not apply in a case where a person buys "a pig in a bag or a cat in a sack." In such case a purchaser must stand upon his contract.

APPEAL from the circuit court of Washington county. HON. A. J. ROSE, Special Judge.

Suit by Jones & Rogers against C. L. Dulaney et al. From a judgment for plaintiffs, defendants appeal.

The facts are sufficiently stated in the opinion of the court.

*Hugh C. Watson,* for appellants.

The rule of law involved in this case is that a vendor of feed stuff sold for the purpose of being fed to the animals of the vendee is held to impliedly warrant the soundness and wholesomness of the articles so sold.

It will be kept in mind that the vendor in this case was a dealer and the vendee was a consumer. That this is not a case between dealers.

It is contended by the appellees that this rule is applicable when the articles sold are intended for consumption by man, but that there is no implied warranty where the grain is to be consumed by animals. We think that the sounder and more humane reasoning is with our contention, and we cite the following cases in point: *Houk* v. *Berg,* 105 S. W. (Tex.), 1176; *French* v. *Vining,* 3 Am. Rep. (Mass.) 440.

In *Hauk* v. *Berg,* the appellee bought the grain from the appellant, a grain dealer, who had purchased it from another, a milling company. Says the court: "The rule as between dealers is not the same as between dealer and consumer. It is the rule that where a dealer or ordinary trader sells goods for immedate consumption by the buyer, an implied warranty arises that the goods are wholesome and fit for food." This was a case where

rotten food stuff had been sold by the vendor to the con-
sumer and by the latter fed to his horse and mule, which
caused the death of the horse and the sickness of the
mule. *Held,* that an action for damages against the ven-
dor would lie.

*French* v. *Vining* was a case where hay, which had been
accidently poisoned, was sold for cow feed. Says the
court: "It is perfectly well settled that there is an im-
plied warranty in reference to manufactured articles
purchased for a particular use, which is made known to
the vendor; that they are reasonably fit for the use for
which they are purchased."

It was laid down firmly, early in the history of the
law, that in contracts for provisions it is implied that
they are wholesome, and that if they are not wholesome,
an action on the case lies for deceit against the vendor.
3 Blackstone, page 105.

Some of the leading cases on this subject in which the
law is carefully reviewed are *Tomlinson* v. *Armour &
Co.,* 19 L. R. A. (N. S.) 923 (N. J.) ; *McKibbins* v. *Box,*
13 L. R. A. (N. S.) 646 ; *Craft* v. *Parker,* 21 L. R. A. 139
(Mich.) ; *Darks* v. *Sudders-Gayles Gro. Co.,* 130 S. W.
434. The fact that the decisions of the courts on this
subject were not ample to protect the public from the
vendor of adulterated, unwholesome and unhealthy food,
has necessitated federal and state legislation on this
subject.

It seems to us that for the courts to apply this humane
rule to protect dumb brutes and the owners thereof from
the vendors of unwholesome, unhealthy and rotten food
stuffs would be a salutary step that would be fraught
with much good.

*Shields & Boddie,* for appellees.

The implied warranty as to food intended for human
use is not extended to food stuff for animals. In the
case of *Lukens* v. *Friend,* 27 Kan. 664, reported in 41

Am. Rep. 429, Judge Brewer, in delivering the opinion, says: "Upon what ground is an implied warranty rested in the case of the sale of provisions which does not exist in the case of sale of other articles? Obviously, it is not upon any property grounds, or because thereby the estate of either party is affected, but for reasons of public policy, for the preservation of life and health, the law deems it wise that he who engages in the business of selling provisions for domestic use should himself examine and know their fitness for such use, and be liable for a lack of such knowledge. One may not place poison where it is likely to be taken by one ignorant of its qualities. Regard for human life compells this. No more may he sell food unfit to be taken to a man who he knows is buying it to eat. The same reason controls, to-wit, regard for life and health. But this, it will be remembered, is an exception to the general rule of the common law, and the exception should not be extended beyond the reach of the reasons upon which it is based. If the preservation of human life and health be as we think it is, the foundation of this exception, then it should not be extended to cases in which human life and health are in no wise endangered. Now, the claim of the plaintiff is simply of a property loss, that his estate has been diminished, and that alone is his cause of action. His injury is similar to that which he would have sustained if he had purchased from a wagon maker a defective wheel, and thereby his wagon was broken down. No matter of health or life of himself or family is involved. We think, therefore, that no recovery can be had under the principles of this exception."

This doctrine has been approved in the following sases: *National Cotton Oil Co.* v. *Young,* 109 Am. St. Rep. 71, 85 So. Rep. 92; see, also, *Farren & Co.* v. *Dameron & Bailey,* 58 Atl. Rep. 367; *McKinnon Mfg. Co.* v. *Alpena Fish Co.,* 60 N. W. 472.

In the case referred to by counsel for appellants, *French* v. *Vining,* 3 Am. Rep. 440, by a careful reading

of the opinion, the court will readily see that the liability resulted from the negligence or deceit of the seller in not disclosing what had happened to the hay sold, and the question of an implied warranty was not the decisive question in the case, and this case is not an authority for the doctrine of implied warranty in the case of sale of food stuff.

Except the one case of *Houk* v. *Berg,* referred to in brief by counsel for appellants, we can find no authority sustaining the proposition as contended for by appellants under the facts contained in the pleadings in this case, and that case relies on *French* v. *Vining,* which is not in point.

McLEAN, J., delivered the opinion of the court.

Appellees brought suit against appellants, on an open account, for goods, wares, and merchandise before that time sold and delivered, claiming a balance of three thousand, one hundred and ninety-one dollars. There is annexed to the declaration the account, which shows that the goods sold were feed stuffs for animals. The second plea of the defendants was, in substance, that the account sued on was for feed stuff for animals of defendants; that said feed stuff was sold to defendants to feed to his mules, with the belief that the same was sound, wholesome feed; that said feed stuffs were not wholesome, sound, etc., but were decayed, rotten, unfit, and unwholesome feed for said mules, and were in such rotten condition as, when fed to said mules, they made said mules sick, causing the death of six of them, etc. Wherefore defendants pray that they be allowed to recoup the amount of said damage, totaling three thousand, eight hundred dollars, against the account sued for. The third plea of defendants set out that the feed stuffs were not sound and wholesome feed for their animals, but, "on the other hand, were so decayed, damaged, and rotten as to be unfit for the purpose for which same were sold,

unfit to be fed to said mules, and unfit to be fed at all, and were worthless and of no value.'' The plaintiffs demurred to said pleas, and, the demurrer being sustained, defendants declined to answer, and a judgment was rendered for plaintiffs.

It is argued with much ability, by the appellees, that an implied warranty of soundness arises only in cases where the food sold is for human consumption. After a careful consideration of the question, our conclusion is that, according to the weight of authority in this country, there is an implied warranty of soundness in the case of the sale of provisions intended for human food, but with food for other purposes there is no implied warranty of soundness. This is put upon the grounds of public policy, the controlling reason being the regard for human life and for human health. See authorities cited in brief of counsel for appellees.

As to the third plea, we construe that plea to mean that its averment as to the feed stuff having been sold under an implied warranty that the same was sound and wholesome for mules of the defendants is a mere conclusion of law, and not a statement of fact, and is alleged in the plea as a mere matter of inducement. The plea alleges that the feed stuff was ''worthless and of no value.''

We do not know of any law, and counsel have failed to cite us to any authority, that holds that a person is liable when he buys articles that are worthless and of no value. The law does not imply a promise upon the part of the purchaser to pay for goods that are worthless and of no value. In such cases there is a total failure of consideration. We construe the plea to be equivalent to a plea of total failure of consideration.

If the articles purchased are worthless and of no value at all, the purchaser is not required even to return or to offer to return them. This principle, of course, is not applicable in a case where a person buys ''a pig in

a bag or a cat in a sack." In such cases he must stand upon his contract; but where he purchases things for consumption, either for human food or for use of live stock, he cannot be made to pay for those things which are worthless and of no value. No question of estoppel arises upon the record in this case. We do not know what defendants did with the articles purchased. We decide this case simply on the allegations in the plea that the article was worthless. The demurrer to the third plea should not have been sustained, but plaintiffs should have replied thereto.　　　　　　　*Reversed.*

Suggestion of error filed and overruled.